JOSEPH FERGUSON *vs.* JOSEPH KUMLER.

September 13, 1880.

**Homestead—Excess over Statutory Limit.**—The fact that the homestead which a party has actually made, and is occupying and claiming as such, includes more land than is permitted to be included within the limits of an exempt homestead, under the provisions of section 1 of the homestead statute, does not render the whole of such homestead tract liable to sale on execution, even though such party wholly neglect to define the boundaries of his homestead within the limits prescribed by that section. The ruling upon this point, in the decision of this case on a former appeal, (25 Minn. 183,) adhered to.

**Same—Sale by Owner.**—Since the enactment of the statute allowing the owner of a homestead to sell and convey the same, and providing that no judgment shall be a lien on such homestead for any purpose, (Gen. St. 1878, *c.* 68, § 8,) a sale of the homestead, even with a fraudulent intent, will not make the same liable to forced sale on execution. *Morrison* v. *Abbott, ante,* p. 116, followed.

This action was commenced before a justice of the peace, under Gen. St. *c.* 84, § 11, to dispossess defendant of certain

land, which had been sold on execution against him to plaintiff, and the time for redemption from the sale having expired. The title to real estate becoming involved, the action was certified to the district court for McLeod county. After the decision of the former appeal (reported, 25 Minn. 183,) the action was retried before *Macdonald,* J., and a jury, which returned a special finding of the facts and a general verdict for defendant. The plaintiff moved for judgment on the special findings, and notwithstanding the general verdict. The motion was denied, judgment was entered for the defendant, and the plaintiff appealed.

*Bigelow, Flandrau & Clark* and *S. L. Pierce,* for appellant.

*L. M. Brown,* for respondent.

CORNELL, J. In the special findings returned by the jury, it is stated that, at the time of the levy, the defendant notified the sheriff that he claimed a homestead in the land whereon he resided with his family, but that he did not in any manner designate to the officer any particular part of the premises which he claimed as a homestead. There is no specific finding, however, in respect to the allegations of the answer, "that he, the said defendant, there and then notified the sheriff that he regarded and claimed 80 acres of said premises as his homestead, and did then and there demand of said officer that he be allowed to select such homestead therefrom, as provided by law, and that said 80 acres so selected be excepted from such levy, seizure and sale; and that said officer then and there refused to allow said defendant to select such homestead, and then and there notified him that he should and would sell the whole of said premises under said execution." In determining, therefore, plaintiff's motion for judgment, the truth of these allegations must be taken as established by the general verdict in favor of the defendant upon all the issues involved in the pleadings. Upon this state of facts, the question presented for adjudication is whether the sale which was made upon the execution, in pursuance of the levy, of the entire premises,—which the defendant, a married man, then

occupied as an owner, claiming a homestead right therein, and on which he resided with his family, in a dwelling-house situated thereon,—in total disregard of the existence of any homestead, was a valid sale, sufficient to transfer the title, and enable the plaintiff to recover the possession of said premises, or any part thereof, in this action?

In the consideration of this case on a former appeal, (25 Minn. 183,) it was held that it was not necessary for an execution debtor, in order to preserve his homestead exemption, to give to an officer about to make a levy a description of the premises claimed by him as a homestead, together with a notice that he was claiming them as such. In stating the reasons for this ruling, the court then said, (p. 188:) "The statute gives the exemption absolutely, and without making the right to it dependent upon any affirmative action upon the part of the person claiming it towards an officer levying, or about to levy, upon it. In the second place, the exemption is not provided for the sole benefit of the owner of the land, if he be a married man. In such case, the homestead law is a family measure,   *   *   and it is not competent for the husband alone, in any way, to effectually waive the exemption."

If the positions thus taken are good, and the ruling then made is to stand, they are decisive of the question under consideration; and this the counsel for plaintiff seems to concede, for he asks us to review that decision as erroneous. His contention, in brief, is this: That the statute makes no provision for securing a homestead against forced sale on execution when the debtor is residing upon and occupying as a homestead a greater quantity of land than 80 acres, except upon the condition that he makes a selection, and defines by metes and bounds, within the prescribed limits, the particular tract which he regards as his homestead. Until this is done, he has no homestead exempt from seizure and sale on execution. In other words, this fact of a selection by the debtor, and setting apart by metes and bounds, of the specific

lands claimed as a homestead, is one of the tests and elements essential to the creation and existence of an exempt homestead under the statute.

This construction, in our opinion, is at variance with the manifest policy of the homestead law, and its leading purpose, as evidenced by the language of the statute. The law originated in the wise and humane policy of securing to the citizen, against all the misfortunes and uncertainties of life, the benefits of a home, not in the interest of himself, or, if a married man, of himself and family alone, but likewise in the interest of the state, whose welfare and prosperity so largely depend upon the growth and cultivation among its citizens of feelings of personal independence, together with love of country and kindred—sentiments that find their deepest root and best nourishment where the home life is spent and enjoyed. Its leading purpose is to exempt from forced sale a homestead—the place made such by the choice, residence, use and occupancy of the owner as a home, including, as its necessary incidents, the dwelling-house and its appurtenances, and the land thereto belonging. But these are not, like the homestead itself, the primary objects of the exemption. They are only covered by it because, being constituent parts of the homestead, they are necessarily included within it as such parts. *Tillotson* v. *Millard,* 7 Minn. 419 (513;) *Gregg* v. *Bostwick,* 33 Cal. 220, 225. Such being the purpose and policy of the statute, its provisions should be liberally construed, so as to carry out the legislative intent thereby manifested.

The word "homestead" is used in this statute in its ordinary and popular sense, to designate a dwelling-place used and occupied as a home for its owner, and his family, if he has one. *Tillotson* v. *Millard,* 7 Minn. 419 (513.) It comprises fitness in the place for the uses of a home, which includes a dwelling-house and more or less land connected therewith, and residence, use and occupancy by the owner as a home for himself, and also for his family, if he have one. These

are the essential tests of a homestead in fact, and, wherever these facts exist, there is a homestead which has already been selected or chosen, and which the statute was intended to protect absolutely in favor of the owner and his family, subject simply to a limitation upon the quantity of land allowed to be retained as a part of it, in case the place so used and occupied exceeds the limits prescribed by the statute. The question as to quantity is unimportant in determining the existence of the homestead, and the right of the owner to the benefits of the exemption: it is only pertinent after a homestead is once established, and then only as a question of limitation upon the extent of the homestead, with reference to ascertaining what excess, if any, outside the prescribed limits, is liable to sale on execution. *Gregg* v. *Bostwick*, 33 Cal., *supra*.

The settlement of this question by the debtor householder is not made by the statute a condition, either to the creation of an exempt homestead, or to his continued enjoyment of one already created. On the contrary, it distinctly recognizes the fact that an exempt homestead may exist under the protection of the statute, when the householder is using and occupying for a home land in excess of the statutory limits, and when he has not defined the boundaries of his homestead within the prescribed limits, by setting apart the same "by metes and bounds," (Gen. St. 1878, c. 68, § 3;) and, in such case, the privilege is accorded him of fixing such boundaries after a levy; but a failure to exercise this privilege is not made a cause affecting his right of exemption, either as a waiver or as a forfeiture. Upon this point the statute is silent. The legislature seem to have acted upon the presumption that a privilege thus advantageous to the debtor would always be exercised, and hence have only provided a check against its abuse, by giving to the plaintiff in the execution, in case of dissatisfaction caused by the debtor claiming and setting apart, as a part of his homestead, more land than he is entitled to hold under the limitations prescribed, a right to cause a resurvey thereof by the officer, at the debt-

or's expense.  Id. § 4.  The same consequence, as was inti-
mated in the opinion on the former appeal herein, would
probably flow from an entire omission of the debtor to specify
any limits or boundaries to his homestead, but no greater;
for it is not to be supposed that it was within the intention
of the legislature to visit upon the debtor and his family any
more serious consequences, for an omission to exercise a priv-
ilege, than for its abuse.  If the construction contended for
by plaintiff is to prevail, the benefits intended to be secured
to the family of the debtor, beyond any act of waiver or dis-
position on his part alone, might be effectually lost through
his mere carelessness, or, perhaps, connivance with the cred-
itor.  We see no good reason for changing the ruling or mod-
ifying the views expressed upon the former determination of
this case.

Whether, upon the general verdict and the special findings,
the conveyance from Michael Kumler to the wife of the de-
fendant is to be treated either as an absolute transfer to her,
with a fraudulent intent, of the whole title to the property,
both legal and equitable, or as merely vesting in her the
naked legal title, which Michael held solely in trust for his
son, after the payment of the debt on account of which he
acquired such title as a security, is wholly unimportant, for
in neither case was the homestead interest (which defendant,
as the equitable owner thereof, had in the premises at the
time the judgment was docketed, in May, 1862) subject to
sale on the execution issued in 1870.  In the latter case, he
still remained the equitable owner of the homestead, and was
entitled to the protection of the statute, by which it was ex-
empt.  *Wilder* v. *Haughey*, 21 Minn. 101.  If the former
was the case, and the absolute title to the property was trans-
ferred to the wife through the procurement of her husband,
he had the right to cause such transfer, so far as it related
to the homestead, to be made, as against this judgment, even
though it was made for a fraudulent purpose; for, by the
statute, (Gen. St. 1878, *c.* 68, § 8,) the judgment was no lien

upon the homestead for any purpose, and any sale or conveyance of it by him would not render it liable to a forced sale on execution. *Morrison* v. *Abbott, ante*, p. 116.

In respect to the position that the sale on the execution was valid as to the excess over the 80 acres which the defendant was entitled to hold as his homestead, and that, therefore, plaintiff was entitled to a judgment for the recovery of the possession of such excess, it is sufficient to say that neither the pleadings, the general verdict, nor the special findings, furnished any *data* for ascertaining the boundaries of such excess.

Judgment affirmed.