## SALLE v. LIGHT'S Exr's, use, &c.

1. Where personal property is sold with a warranty of title, the vendee cannot maintain an action against the vendor, upon an allegation that his title was defective, unless he has been first charged at the suit of another person, whose right has been adjudged to be paramount, and the judgment has been satisfied, at least in part. A declaration which does not substantially alledge these facts, is demurrable.

2. In an action by the vendee of personal property against the vendor upon a warranty of title, a judgment against the vendee at the instance of a third person, claiming to be the rightful owner, of which suit the vendor had no notice, is not evidence to prove that the title of the latter was defective. But it seems, that such judgment is admissible to prove the amount of damages recovered; and is conclusive of the invalidity of the vendor's title, if it was obtained without fraud or collusion, upon notice given to him of the pendency of the action.

3. A count in an action on a warranty of title, which alledges that a slave sold by the defendant to the plaintiff, and by the latter to L. had been adjudged to be the property of B. in an action of detinue prosecuted by him against L., does not state a good cause of action. So a count in such case is alike defective which deduces the defendant's liability from the recovery of B. against L., the satisfaction of that judgment, by the latter, his reimbursement by the plaintiffs, and a notice of these facts to the defendant.

4. To entitle the plaintiff to recover of his vendor on a warranty of the title of personal property, where he had sold the same to L., of whom B. had recovered it, the declaration should alledge that the plaintiff was informed of the pendency of the suit against L. in order that he might defend the same; and further, that B's. title was superior to the defendant's.

5. The measure of damages in an action for a breach of a warranty of title on the sale of personal property, cannot exceed the damages sustained by the vendee.

WRIT of error to the Circuit Court of Mobile.

This was an action of covenant at the suit of the defendants in error against the plaintiff. The declaration as filed, contained five counts, but a *nolle prosequi* being entered as to two, the cause was tried on three; all of which alledge, that the defendant below, on the 29th day of October, 1828, by his writing obligatory of that date, bargained, sold and delivered to the testator of the plaintiffs, for the consideration of seven hundred and fifty dollars, the following slaves, to wit: Ned, a negro man, and Daniel, a boy; "to have and to hold said slaves to the said Wm. Light and his heirs forever;" the defendant covenanting by his writing obligatory, "to defend the title to the said property against all legal claims whatsoever." The first count, after alledging the appointment of plaintiffs as executors of William Light, &c., states that they afterwards "sold and delivered the said negro man, Ned, to one Henry Lazerus, who was afterwards, and before the commencement of this suit, dispossessed of the said slave named Ned, by due course of law, he the said Henry Lazarus, claiming the said slave under the sale aforesaid, and under the said William Light, and under the title of the said George F. Salle, so made by the writing obligatory aforesaid; of all which said several matters, the said defendant had notice, to wit, at the county aforesaid; and so the said plaintiffs say, that the said defendant hath not kept his covenant," &c.

The second count, after stating the bill of sale and covenant, proceeds as follows:

"And the said plaintiffs aver, that the said defendant has broken his said covenant in this, to wit: that the said slave Ned, having been sold to the said Henry Lazarus, one James A. Beale commenced in the Circuit Court of Mobile county aforesaid, his certain action of detinue for said slave, Ned, and at the November term, 1833, recovered judgment for the said slave, or his alternative value of fifteen hundred and ten dollars, and costs of suit, which judgment the said Lazarus had paid, whereby the said plaintiffs, as executors of the said William Light, deceased, were bound to pay, and did pay to the said Henry Lazurus on their sale and warranty to him, a large sum, to-wit: two thousand dollars; of all which defendant had

notice, against which the said defendant did not defend them, the said executors of said William Light, deceased; whereupon they say that said defendant has broken his covenant," &c.

The third count after reciting the covenant, continues, "and the said plaintiff avers and in fact saith, that at the time of making said writing, the said defendant had no interest or property in or to said slave Ned, but the true property was in one James A. Beale; and the plaintiffs aver, that the said slave Ned was of great value, to-wit: of the value of two thousand dollars; wherefore they say, that the said defendant has broken his covenant with the said William Light in his lifetime, and has not performed it either to the said William Light, in his lifetime, or to the said plaintiffs, as his executors, since his death," &c.

The defendant craved oyer of the bill of sale and covenant therein contained, and set it out; he also craved oyer of an assignment thereon written, and set it out in these words, "For value received I hereby assign and set over to Henry Lazarus, the within sale and covenants therein contained, and authorize the said Henry Lazarus in my name, as administratrix of William Light, deceased, to commence and prosecute all suits at his own costs, against George F. Sallee, on the covenants therein contained. The said assignment being made without any recourse on me. February second, eighteen hundred and thirty five. Witness my hand and seal.

C. E. LIGHT, [seal.]

Adm'x. of Wm. Light, deceased.

Attest: Isaac H. Erwin, Benj. Wilkins."

The defendant then demurs to the first count, assigning for cause, 1. That the breach is alleged to have happened to Henry Lazarus, and the damages to have been sustained by the plaintiffs for his use. 2. That the writing obligatory is described as dated the *ninth*, when its true date is the *twenty-ninth* day of October, 1828.

1. For plea to the second count, the defendant craved oyer of the bill of sale therein described, and the assignment thereon written, and set them out, and says *actio non*, because he says that Henry Lazarus did by deed, bearing date on the second day of February, 1835, in consideration of the sum of two hun-

dred dollars to him in hand paid by Mrs. Catharine E. Light; and for the further consideration of the assignment of a liability of George F. Sallee, discharge her individually, as well as the estate of her deceased husband, William Light, and all persons interested therein, from all liability on account of the bill of sale and warranty therein contained.

2. For plea to the third count, the defendant, after craving oyer of the bill of sale therein described and assignment thereon written, and setting them out, says *actio non,* because he says that on the day when the bill of sale was made, the negro Ned was a slave, and was then and had been for a long time previously in his possession, under a *bona fide* purchase for a valuable consideration, and was delivered to William Light: and so he avers he has not broken his covenant with William Light in his lifetime, or since his death with his administrators.

3. The defendant further pleads, the contract contained in the assignment, written on the bill of sale, in bar of a recovery on the second and third counts.

4. He also pleaded a plea to both these counts, in substance the same as the first plea to the second count.

5. *Further :* The defendant pleaded, that he hath not broken his covenant, either in the lifetime of William Light, or since his death.

6. *Again :* That he had an interest and property in the negro man Ned, at the time of the sale and delivery to William Light.

7. *And lastly :* That he hath kept and performed his supposed covenant or warranty, with William Light in his lifetime, and with his executors since his death.

The plaintiff craved oyer of the supposed release relied on by the fourth plea, and set it out *in hæc verba.*    " In consideration of the sum of two hundred dollars to me in hand paid by Mrs. Catherine E. Light, of the city of Mobile, the receipt of which I hereby acknowledge, and for the further consideration of the assignment of a liability of George F. Salle, I hereby discharge her individually from all liability, harm, or injury, on a warranty bill of sale for a negro man named Ned, sold to me in the lifetime of her husband William Light, by the said William Light.    I further discharge the estate of the said William Light and all persons interested therein, from all liabilities to

me on account of said bill of sale and warranty of title to the said negro man, Ned.

"Witness my hand and seal, this second day of February, eighteen hundred and thirty-five.

HENRY LAZARUS, [seal.]

Witness—Benj. Wilkins, Isaac H. Erwin.

They then demur generally to the fourth and all the other pleas. The Circuit Court overruled the demurrer to the first count of the declaration, and sustained the demurrers to each of the pleas; and the defendant declining to plead over, the cause was submitted to a jury as on writ of inquiry, who returned a verdict for the plaintiffs, for three hundred and eight dollars and forty-four cents. For that sum, together with costs, judgment was rendered.

SALLE, *in propria persona*, submitted a written argument, in which it is insisted that neither the nominal plaintiff or Lazarus could maintain an action against him for a breach of warranty. The latter could not have the benefit of Salle's contract with Light, because it was not legally assignable under the statute of 1807 or 1812. [Aik. Dig. 327-8.] Neither William Light or his executors, have ever been sued for the slave Ned; the defendant below has had no opportunity of defending the title he conveyed to the testator; had no connection with the suit between Beale and Lazarus; and consequently cannot be charged for a breach of his warranty. The recovery against Lazarus was as to the defendant *res inter alios acta*. Lazarus can maintain no action against Light's executors; his release estops him, and will enure to the benefit of the defendant, so as to prevent any action by them against him.

A warranty does not run with a chattel, so as to make the defendant liable to Lazarus. [Platt on Cov. 27; 1 Shep. Touchs. 184; 1 Co. Lit. 101, b.; Riddle v. Mandeville, 5 Cranch's Rep. 327; Bac. A. tit. B.] This being the case, the defendant had no right to interpose a defence to the suit by Beale.

The executors of Light do not show a right of action in themselves; for it is not alleged that either their testator or themselves have been dispossessed of the slave Ned, by action and title paramount—an allegation indispensible to the suffi-

ciency of the declaration. [Day v. Chism, 10 Wheat. Rep. 449. See also 1 Johns. Rep. 517; 13 Johns. Rep. 226; 14 ib. 253; 19 ib. 77.]

. The last count alledges that the property in Ned was in Beale, and not in the defendant. Let this be conceded and it affords no ground of action; for it does not appear from that count that Beale has or will ever assert his title.

It is laid down in the civil law, that if the purchaser loses the thing sold by his default, or defends himself ill; does not give notice to the seller, or consents to a reference or transaction, without the seller's consent, or in any manner prejudices the warrantor's condition, he cannot demand compensation of him. [Domat's Civ. Law. 82.]

The plaintiff in error also cited, Phil. Ev. 222-6-7, note, and 231; 1 Starkie's Ev. 190; 2 H. & Munf. Rep. 139; 1 Johns. Rep. 517; 2 id. 1, 4; 3 id. 11, 12; 7 id. 258, 173; 11 id. 122; 13 id. 224; 14 id. 253; 19 id. 77, 296.

CAMPBELL, for the defendant in error.

COLLIER, C. J.—The legal sufficiency of the entire declaration was brought to the view of the Circuit Court by the demurrer to the first count, taken in connection with plaintiff's demurrer to the pleas, and we propose to consider the law, as applicable to every part of it. It may be premised, that the express covenant contained in the bill of sale of defendant, is nothing more than a warranty of title, and consequently confers the same rights and imposes the same obligation, and nothing more. To entitle the vendee to recover for a breach of such a contract, he must show that he has been deprived of the thing sold, by title paramount, though it is not necessary that he should alledge a deprivation of the property in these precise terms. ⸴ It is enough if the breach be stated in words of equivalent import. Thus in Day et al v. Chism, [10 Wheat. Rep. 449,] it appears the defendant covenanted and agreed by indenture with the plaintiff, his heirs and assigns, to warrant and defend the title to the premises described, against the claim of all and every person whatsoever, as his own proper right in fee simple. The plaintiff averred that the defendant "had not a good and sufficient title to the said tract of land; and by rea-

son thereof, the said plaintiffs were ousted and dispossessed of the said premises by due course of law." The Court say, "This averment, we think, contains all the facts which constitute an eviction by title paramount. The person who, from want of title is dispossessed and ousted *by due course of law*, must, we think, be evicted by title paramount." In Abbott v. Allen, [14 Johns. Rep. 253,] it is said, "The marked distinction between a covenant of seisin, and those for quiet enjoyment and general warranty, consists in this, that the covenant of seisin, if broken at all, must be so at the very instant it is made; whereas, in the latter covenants, the breach depends upon the subsequent disturbance and eviction, which must be affirmatively alleged, and proved by the party complaining of the breach." And in Vibbard et al. v. Johnson, [19 Johnson. Rep. 77,] it was held, if a purchaser voluntarily pays the price of the goods purchased, to a third person, who claims them, he cannot afterwards in a suit brought by the vendor against him for the price, set up the want of title in the vendor, and that he had paid the price to the true owner as a defence. The Court saying, "The plaintiffs below being in possession of the tea, sold it as his property to the defendants. [Kennedy v. Strong, 14 Johns. Rep. 128.] They cannot in this way draw the plaintiff's title in question by their own voluntary act of payment. It is not competent to them to dispute the title of their vendor, unless they have been charged at the suit of another person, who has after contestation shown a better title. The principle is analagous to a demise of a house by A. who is in possession claiming title, to B. The latter receives the possession, and enjoys the premises by the permission and on the letting of A. In an action for the rent, B. cannot set up that A. has nothing in the premises, and that he has paid the rent to C. voluntarily. If C. had recovered the rent and substantiated his title, then it would be a good defence; otherwise not." See also Livingston v. Bain, 10 Wend. Rep. 384.

In respect to the effect of the recovery by Beale against Lazarus, it may be laid down generally, that in an action by the vendee of personal property against the vendor, upon a warranty of title, a judgment for the property against the vendee by a third person claiming to be the rightful owner, in a suit of which the vendor had no notice, cannot be given in evidence

to prove that the latter had *no title*.   [Sanders v. Hamilton, 2 Hayw. Rep. 226; Stevens v. Jack. 3 Yerg. Rep. 403; Jacob v. Pierce, 2 Rawle's Rep. 204; Blasdale v. Babcock, 1 Johns. Rep. 517; Burrill v. West, 2 N. Hamp. Rep. 190; Coventry v. Barton, 17 Johns. Rep. 142; Stone v. Hooker, 9 Cow. Rep. 154; Copp v. McDugall, 9 Mass. Rep. 1; Bond v. Ward, 1 Nott & McC. Rep. 201.   See also Leather v. Poultney, 4 Binn. Rep. 356; Maupin v. Compton, 3 Bibb. Rep. 214; Booker v. Bell, id. 175; Prewit v. Kenton, id. 280; Radcliff v. Ship, Hardin's Rep. 292; Somerville's Ex'ors. v. Hamilton, 4 Wheat. Rep. 230; Green v. The New River Company, 4 T. Rep. 590.]   But it has been held, that although a judgment recovered under such circumstances, will not be evidence of a want of title in the vendor, yet it is *admissible* to show the *amount of damages assessed.*   [Tyler v. Ulmer, 12 Mass. Rep. 166; Carmack v. Commonwealth, 5 Binn. Rep. 184; Lewis v. Knox, 2 Bibb. Rep. 453; Johnson v. Thompson, 4 id. 294; Key v. Walker, 7 Louis. Rep. 297; Boorman v. Johnston, 12 Wend. Rep. 567. See also 3 Phil. Ev., C. & H's. ed. 821-2.]   And it has been repeatedly adjudged where a party has a right of recovery over, either by operation of law, or in virtue of an express contract, he may give notice to the person so reponsible, of the pendency of a suit against him, and if a judgment be obtained without fraud or collusion, it will be *conclusive* evidence for him against such person upon every fact established by it.   The latter, then, cannot be viewed in the light of a mere stranger, but has the same means of controverting the adverse claim, as though he were the nominal and real party on the record.— [Bender v. Frombeyer, 4 Dall. Rep. 436; Hamilton v. Cutts, 4 Mass. Rep. 349; Leather v. Poultney, 4 Binn. Rep. 352; Witmer v. Schlatter, 2 Rawle's Rep. 204; Jacob v. Pierce, id.; Kip v. Bingham, 6 Johns. Rep. 158; Waldo v. Long, 7 id. 173; Barney v. Dewey, 13 id. 226; Bond v. Ward, 1 Nott & McC. Rep. 201; Clark's Ex'ors. v. Carrington, 7 Cranch's Rep. 322; Pinney v. Gleason, 5 Wend. Rep. 535; Tarlton v. Tarlton, 4 M. & S. Rep. 20; Curtis v. Cisna's Adm'rs., 1 Ohio Rep. 436; Walker v. Ferrin, 4 Verm. Rep. 523; Belden v. Seymour, 8 Conn. Rep. 304; Collingwood v. Irwin, 3 Watts. Rep. 306; Brewster v. Countryman, 12 Wend. Rep. 446.]

We have stated these principles as tests by which to deter-

mine the sufficiency of the declaration. The first count alleges that the slave Ned, sold by the defendant to the plaintiff's testator, and by the latter to Lazarus, had been adjudged to be the property of Beale, in an action of detinue prosecuted by him against Lazarus. Now this may be true, and yet the title which the defendant conveyed to the testator, be superior to Beale's. It should, at least, not only be averred that Lazarus was *dispossessed by due course of law,* but that the recovery against him was under title paramount to that of the defendant. Such an allegation is the more especially necessary, as it cannot be intended from any thing stated, that the judgment in that action concluded the rights of any one else, than the parties to it. It may be assumed that it did not, and in a suit by Lazarus against the plaintiffs, the question whether the defendant's or Beale's title was the best, would be open, and could only be adjusted by proof extrinsic of the judgment in favor of the latter.

The second count is also defective. It deduces the liability of the defendant from the recovery of Beale against Lazarus, the satisfaction of that judgment by the latter, his reimbursement by the plaintiffs, and the notice of these facts by the defendant. If the plaintiffs had notice of the pendency of the action by Beale, and opportunity afforded to defend it, so that the judgment would have been conclusive of their want of title, then they might have discharged the judgment and sued the defendant. Such a state of things would have been equivalent to a payment under legal coercion. But even then, the question of title as between the plaintiffs and defendant, would be subject to the fullest examination.

It is perfectly clear, that the defendant's covenant with the plaintiff, was a matter not assignable under any statute of ours, and did not enure so as to give a right of action to any one who might subsequently become the purchaser of the slave. Whether the plaintiffs, upon being vouched by Lazarus to defend his title, could have called the defendant to their aid, and thus have made the judgment in favor of Beale conclusive of their right to recover of him, after they had satisfied Beale, is a question which does not arise upon the record; and will not, consequently, be mooted. In addition to the grounds on which this Count places the liability of the defendant, it should

be alledged, that the plaintiffs were informed of the pendency of the suit against Lazarus, that they might defend the same; *and further*, that the title under which Beale claimed, was superior to that of the defendants.

From what we have said it will be seen that the third count is palbably bad.    It merely affirms, that the defendaht, at the time he made the bill of sale, had no interest in the slave, Ned, "but the true property was in one James A. Beale."   This may all be true, and yet the defendants covenant be unbroken. There is no allegation of fraud on the part of the defendant to the plaintiff's injury, nor is it even averred that Beale has attempted to enforce his title.    It is difficult to conceive of a right to recover damages, so long as the enjoyment of the property is unmolested.    If the fact alledged be true, the plaintiff's testator might have dissolved the contract by an offer to return the slave to the defendant, and recovered the purchase money by suit, but it is not pretended such an offer was made, nor indeed can it be successfully.

It is unnecessary, after what has been said, to consider the effect of the arrangement between Lazarus and Mrs. Light, as evidenced by the writing.    This will be discovered by an application of the principles stated.    It may, however, be proper to remark, that if the plaintiffs can make out a right of action against the defendant, the release contained in that paper will not so inure to him as to defeat a recovery; but the measure of damages will not be the amount of Beale's judgment—it cannot exceed the injury sustained by the breach of the covenant.

We will not undertake to examine the defendant's pleas with particularity, as the pleadings will doubtless all be remodelled, if the case progresses farther.   The pleas, with few exceptions, cannot abide the test of legal criticism, and most of them were apparently intended to meet the form of allegation adopted in the declaration.

Our conclusion is, that the judgment must be reversed and the cause remanded.